**Burlington Development Review Board**
645 Pine Street
Burlington, VT 05401
www.burlingtonvt.gov/DPI/DRB
Phone:    (802) 865-7188

AJ LaRosa
Caitlin Halpert
Brad Rabinowitz
Geoffrey Hand
Brooks McArthur
Chase Taylor
Leo Sprinzen
Sean McKenzie (Alt.)
Emily O'Hara (Alt.)



**Burlington Development Review Board**
**Findings of Fact**
**Deliberative Hearing Tuesday, January 11, 2023**

**In RE:**  ZP-22-576; 20 Pine Street (Ward 3C, FD6) (Tax Lot No. 044-2-010-000)

**Owner/Applicant:** John Caulo, LandPlan / Cathedral of the Immaculate Conception Charitable Trust; Monsignor Peter Routhier

**Request:** Demolition and removal of existing church building, bell tower, parking lot, and impervious pathways. Foundation hole to be filled and site will be graded and seeded. Planned landscape with trees will be retained.

**Members Present:**
> AJ LaRosa
> Caitlin Halpert
> Brad Rabinowitz
> Brooks McArthur
> Chase Taylor
> Leo Sprinzen

**Evidence Presented:**
The Board examined the materials submitted in support of this request along with the testimony of Applicant, submissions from members of the public entered into the record and testimony from members of the public.

**I. FINDINGS**

**Background Information:**
The applicants are seeking approval to demolish the building and all site improvements (parking area, walkways, and bell tower). The trees and lawn would remain. No development would remain on the lot, nor would there be any use.

20 Pine Street is a significant property within the city's downtown. It was identified within a 2010 *Survey of Modern Architecture in Burlington* funded with grant funds from the National Park Service through the Vermont Division for Historic Preservation and awarded to Burlington's Certified Government Program.

There is also a substantial body of evidence, including articles in national publications attesting to the importance of the structure and its companion landscape, in part due to the association

with the specific design professionals (Edward Larrabee Barnes and Dan Kiley) and the notable architectural style and siting of the building within the landscape.[1]

Neither the building nor the landscape have been listed on the state or National Register of Historic Resources. Both, however, were determined eligible for listing during the Consultation Process for the Transit Center project on St. Paul Street in 2013. The Vermont Division for Historic Preservation resolutely defined both the building and landscape design as eligible under Criteria Consideration G (Properties That Have Achieved Significance Within the Last Fifty Years.) A revised agreement between Federal Highway Administration, Vermont Agency of Transportation, and the Vermont Division for Historic Preservation incorporated acknowledgement of the eligibility of these properties within the Area of Potential Effect (APE). The building is not fifty years old; it is forty-five years old.

The subject property is permitted as a place of worship and continues to be owned by a religious institution. Although worship services have ceased, no change in use of the property has been sought or permitted. A place of worship is a permitted use in the Comprehensive Development Ordinance. As such, it does not expire after a year of discontinuance like nonconforming uses do.

Vermont Statute limits municipal review under 24 V.S.A. §4413 in the following circumstances:
   (a) (1) *The following uses may be regulated only with respect to location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking, loading facilities, traffic, noise, lighting, landscaping, and screening requirements, and only to the extent that regulations do not have the effect of interfering with the intended functional use:*
   *(C) churches and other places of worship, convents, and parish houses.*

The property is located within the city's downtown, in the FD6 form code district. The application review standards of Article 14: *PlanBTV Downtown Code* apply. The statutory limitations noted in 24 V.S.A. §4413 substantially limit those review standards. Similarly, the standards for review of changes to historic structures under CDO Sec. 5.4.8, *Historic Buildings & Sites*, do not apply.

Application review process and criteria are two different things. Application review process is either administrative or Board review. The Comprehensive Development Ordinance specifics review process for all application types. Alternative compliance requires Board review. Application review criteria pertain regardless of review process. In this case, the application requires Board review. The applicable review criteria in this case are substantially limited by 24 V.S.A. §4413.

Sec. 14.2.2- *Applicability* of the *PlanBTV Downtown Code* states that all development comply with the standards of the code. Removal of the building and site improvements does not comply with the application review standards of Article 14. Sec. 14.7.3-*Variation from the Form: Administrative Relief, DRB Alternative Compliance, and Variances,* articulates several alternative paths for work not in compliance with the review standards of Article 14. The

---

[1] See *Architectural Record*, January 1979 and *Architecture + Urbanism*, June 1981.

proposed work does not fall within the limits afforded by administrative or board relief and likely does not satisfy variance criteria. Alternative compliance is applicable for this application and requires review by the Development Review Board in consultation with the Design Advisory Board.

The Design Advisory Board reviewed this application December 13, 2022 and unanimously recommended denial per the following motion:

> The applicant should reconsider demolition and consider ways to keep the building and its landscape intact. We request that the City Attorney confirm whether Sec. 5.4.8 applies or not. There are other resources, like Patricia O'Donnel, that might provide leeway in the interpretation of standards to consider preservation. The DRB should review the full application packet to get a sense of the importance of this property to the community.

There is no question that the property is significant. The limited review under 24 V.S.A. §4413; however, precludes consideration of that significance under CDO Sec. 5.4.8, *Historic Buildings & Sites* and much of Article 14: *PlanBTV Downtown Code*. Though even if 24 V.S.A. §4413 did not apply, the provisions of 5.4.8 do not as the building does not qualify as a historic building under Article 5. It is not yet fifty years old. These findings reflect the input of the City Attorney.

Prior zoning actions for the property.
- **Zoning Permit 20-0810FC;** fence installation. April 2020. (20 Pine Street)
- **Zoning Permit 00-611**; demolish two unit residential structure for additional open space for the existing Catholic Church on the same parcel. (76 Cherry Street). Permit **Denied**, June 2000.
- **Zoning Permit 76-477 / Certificate of Appropriateness 75-48;** Erect a 105' 1 ¾" x 162'6" Church on the premises at 84 Cherry Street, with boundaries [sic] on St. Paul and Pine Streets. Also to create a 26 car off street parking area and landscape. October 22, 1975.

### Article 14: PlanBTV Downtown Code
### Section 14.7.2 Non-Conformities
*In addition to that as specified in Article 5, Part 3 Non-Conformities of the Burlington Comprehensive Development Ordinance, any Building, Structure, Frontage, Development, Site, Improvement, or other appurtenance thereto which lawfully existed at the time of adoption of the applicable provision of this Article or any amendment thereto may be continued subject to the following provisions:*
  a) *Nothing in these regulations are intended to prevent normal repair and maintenance necessary to keep a Building, Structure, Site, Improvement or other appurtenance thereto in a safe and sound condition;*

  b) *Any Building, Structure, Frontage, Development, Site, Improvement, or other appurtenance thereto which legally existed on the effective date of this Article that does not conform to the requirements of this Article may continue until a Substantial Modification is requested or Abandonment occurs.*

   c) *Any nonconforming structure may be enlarged, maintained, repaired or altered, provided, however, that no enlargement, maintenance, repair or alteration shall either create an additional nonconformity or increase the degree of the existing nonconformity of all or any part.*

   d) *At such time when a Substantial Modification is requested or Abandonment occurs, only the affected portions(s) of the Building, Structure, Frontage, Development, Site, Improvement, or other appurtenance thereto shall be required to comply with the applicable provisions of this Article and to the greatest extent practicable in the determination of the Administrative Officer or unless relief is provided by the DRB pursuant to Sec. 14.7.3 below;*

   *and*

   d) *Buildings listed or eligible for listing on the State or National Register of Historic Places shall not be required to make any modifications under this section that would threaten their historic integrity.*

The property, in its existing developed conditions, is nonconforming. The proposed demolition removes that nonconformity and replaces it with no development or use. The demolition is not a "substantial modification" as defined in Sec. 14.8-*Glossary* and, therefore, does not require that the property be brought into compliance with the standards of Article 14. Lacking applicability of Sec. 5.4.8, *Historic Buildings & Sites*, redevelopment is not a requirement of demolition. **(Affirmative finding)**

**Article 14.7.3 Variation from the Form: Administrative Relief, DRB Alternative Compliance, and Variances**
*The planBTV Downtown Code is intended to result in By-Right approval where development occurs strictly in conformance with the requirements of the applicable Form District. In some instances, however, it may be necessary to vary the prescribed form in order to accommodate unique site and/or building circumstances in order to promote context-sensitive development. In such instances, an applicant may seek Administrative or Development Review Board approval for relief from the requirements as set forth below. Any and all relief from the prescribed standards shall run with the land and be binding on the Property Owner and its/their successor and assigns. Applications requesting relief shall be made in writing and in the form as determined by the Department.*

Demolition is not expressly enabled or prohibited by Article 14. Demolition alone is not addressed at all. Even under the statutory limitations of 4413, form code standards as to building bulk, height, setbacks, etc. apply; however, in this case, the end result lacks anything to comply. A currently developed site is being converted to an entirely undeveloped site with no use at all.

The act of demolition requires a zoning permit. The proposed work does not comply with the standards of Article 14 and, therefore, requires review under Alternative Compliance. The review criteria of Alternative Compliance are substantially limited by 24 V.S.A. §4413, and the

complete demolition of the building and all site improvements leaves nothing to comply. **(Affirmative finding)**

**(b) Alternative Compliance Granted by the Development Review Board**
*Additional relief from the prescribed standards may be granted by the Development Review as provided below:*

  i. *DRB Alternative Compliance: Relief from any non-numerical standard, and any numerical standard by no more than 20% of such requirement or an additional 10% beyond any Administrative Relief permitted above, may be granted by the Development Review Board after review and recommendation by the Design Advisory Board and a Public Hearing. Decisions by the DRB regarding any Alternative Compliance granted shall be made in writing and upon affirmative findings that:*

   A. *the relief sought is necessary in order to accommodate unique site and/or Building circumstances or opportunities;*
   Necessity of relief is beyond the scope of review enabled by 24 V.S.A. §4413.

   B. *the relief if granted is the minimum necessary to achieve the desired result;*
   Whether the relief granted is the minimum necessary is beyond the scope of review enabled by 24 V.S.A. §4413.

   C. *the property will otherwise be developed consistent the purpose of this ordinance, the intent of the Form District, the intent and purpose of the section that the relief is being sought, and all other applicable standards;*
   How the property will otherwise be developed is beyond the scope of review enabled by 24 V.S.A. §4413.

   D. *the relief if granted will not impose an undue adverse burden on existing or future development of adjacent properties;*
   Burden on the development of adjacent properties is beyond the scope of review enabled by 24 V.S.A. §4413.

   E. *the relief if granted will yield a result equal to or better than strict compliance with the standard being relieved.*
   Determination or equal or better end result is beyond the scope of review enabled by 24 V.S.A. §4413.

## II. MINUTES

The meeting minutes will be distributed separately upon review and approval by the Development Review Board.

## III. MOTION

**Motion: Caitlin Halpert**

I move that the Board grant approval for demolition and removal of the existing church building, bell tower, parking lot, and impervious pathways and for the foundation hole to be filled, the site to be graded and seeded, and for the trees to be retained, based on the findings in Section I above and subject to the following conditions:

1. 24 VSA, Sec. 4413 does apply to this application and limits review. Though if it did not apply, section 5.4.8 does not. While the building is architecturally unique, it is not historic under the criteria of Burlington CDO Sec. 5.4.8.
2. Upon the representation of the applicant, the grove of trees shall remain after demolition. This is a critical condition of this approval.
3. The chain link fence shall come down.
4. The Applicant/Property Owner is responsible for obtaining all necessary Zoning Permits and Building Permits through the Department of Public Works as well as other permit(s) as may be required.
5. Standard Conditions 1-15.

**Seconded: Brooks McArthur**

**Vote: 4-2-0, motion carried**

Dated at Burlington, Vermont, this 17th day of January 2023

Respectfully Submitted,

*A.J. LaRosa*
AJ LaRosa, Development Review Board Chair

---

**Please note that an interested person may appeal a decision of the Development Review Board to the Vermont Superior Court Environmental Division. (Zoning Ordinance Article 17, Section 17.1.7, Appeals of Development Review Board Decisions: An interested person may appeal a decision of the Development Review Board to the Vermont Superior Court Environmental Division. The appeal shall be taken in such a manner as the supreme court may by rule provide for appeals from state agencies governed by Sections 801 through 816 of Title 3). The Court rules may require that such an appeal be commenced within Thirty (30) days of the Board's decision.**