UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| PRESERVATION BURLINGTON, KARYN NORWOOD, and LIISA REIMANN, <br>     Plaintiffs <br><br> v. <br> THE CATHEDRAL OF THE IMMACULATE CONCEPTION PARISH CHARITABLE TRUST, and CITY OF BURLINGTON, <br>     Defendants <br><br> THE ST. JOSEPH CATHEDRAL PARISH, THE CATHEDRAL OF THE IMMACULATE CONCEPTION PARISH CHARITABLE TRUST, and BISHOP CHRISTOPHER COYNE, <br> Counterclaim, Cross-claim and Third-Party Claim Plaintiffs <br><br> v. <br><br> PRESERVATION BURLINGTON, KARYN NORWOOD, and LIISA REIMANN, and the CITY OF BURLINGTON, VERMONT, Counterclaim, Cross-claim, and Third Party Claim Defendants | * Civil Action No. 2:23-cv-00039 <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

**MEMORANDUM
IN OPPOSITION TO PLAINTIFFS'
MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF
-and-
<u>IN SUPPORT OF CROSS-MOTION TO DISMISS</u>**

**Introduction.**

This case reduces to one simple fact: the Cathedral building in question is not yet at least 50 years old. For that reason the City of Burlington's own zoning ordinance withholds from it subject matter jurisdiction to say whether or not it can be demolished. That, among other things, is fatal to the plaintiffs' (hereinafter "Preservation Burlington")

1

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

Establishment Clause claim. It also compels denial of Preservation Burlington's motion for injunctive relief and compels grant of the cross-motion to dismiss the *Complaint*.

The standard for the grant of preliminary injunctive relief is established by *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2nd Cir. 1979). The movants must show irreparable harm, and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Preservation Burlington meet none of these requirements.

## I. PRESERVATION BURLINGTON HAS NO CAUSE OF ACTION AND THEREFORE HAS NO LIKELIHOOD OF SUCCESS.

### A. Burlington's Own Zoning Ordinance Withholds Subject Matter Jurisdiction to Prohibit Demolition of the Cathedral.

Burlington's zoning ordinance, styled as its *Comprehensive Development Ordinance* (hereinafter "*CDO*"),[1] by its own terms withholds from the City subject matter jurisdiction to disapprove the demolition of the Cathedral because it is a building that is less than 50 years old. Specifically, *CDO* section 3.1.2(a)(4) <u>Zoning Permit Required</u> requires "a zoning permit issued by the administrative officer" for "Demolition." *CDO* <u>Article 13: Definitions</u> defines "Demolition" as "The destruction and physical removal of any structure or portion of a structure." The only substantive zoning standards found in the *CDO* governing the grant or denial of a permit for demolition of a structure are

---

[1] The relevant sections of the *CDO* are attached as Cross-Motion Exhibit #1. Because the *CDO* is published by the City of Burlington on the internet, it is self-authenticating as a government publication under F.R.E. 902(5). <u>See</u> *U.S. v. Iverson*, 818 F.3d 1015, 1021-22 (10th Cir. 2016); *Williams v. Long*, 585 F. Supp.2d 679, 686-91 (D. Md. 2008) and cases cited therein. The same rule applies to the City's own Assessor's Office records and staff reports which are discussed below. The Court may consider such extrinsic materials in support of the motion to dismiss when they are incorporated by reference, integral to the complaint, and/or are matters of which the court may take judicial notice. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2nd Cir., 2011); *Chambers v. Time-Warner, Inc.*, 282 F.3d 147, 153 (2nd Cir. 2002).

supplied by § 5.4.8 <u>Historical Buildings and Sites</u> (d) <u>Demolition of Historic Buildings</u>. The jurisdiction of this section of the *CDO* is limited by subsection 5.4.8 (a) <u>Applicability</u> which provides

> These regulations shall apply to all buildings and sites in the city that are listed, or eligible for listing, on the State or National Register of Historic Places.
>
> As such, *a building may be found to be* eligible for listing on the state or national register of historic places and *subject to the provisions of this section if all of the following conditions are present:*
>
> *1. The building is 50 years old or older* (emphasis added).

The former Cathedral of the Immaculate Conception was destroyed by arson on March 14, 1972.[2] According to Burlington's Department of Permitting and Inspection officials, construction of the new Cathedral was granted a zoning permit by Burlington in 1975.[3] According to the records of Burlington's Tax Assessor, construction of the new Cathedral was completed in 1977,[4] not 1976 as alleged by the Preservation Burlington. Moreover, Preservation Burlington's own Spring 2019 edition of its publication *The Sentinel* states that completion occurred "five years to the date of the fire, on March 13, 1977…"

After hearing, Burlington's Development Review Board ("DRB") issued a written decision on January 17, 2023 [which is attached to Preservation Burlington's filings]. The DRB acknowledged that "section 5.4.8 does not" apply because the Cathedral building is

---

[2] Cross-Motion Exhibit #2, Preservation Burlington newsletter *The Sentinel*, Special Edition, Spring, 2019, "Most Endangered: **Cathedral of the Immaculate Conception**".

[3] Cross-Motion Exhibit #3 December 20, 2022, Burlington Department of Permitting and Inspections, Staff report page 3, published by Burlington at www.burlingtonvt.gov/DPI/DRB/Agendas as a pdf attachment.

[4] Cross-Motion Exhibit #4, published by the City of Burlington at https//property.burlingtonvt.gov/Details/?is=4870.

3

less than 50 years old. "While this building the architecturally unique, it is not historic under the criteria of Burlington CDO Sec. 5.4.8."

### B. Section 4413(a) of Title 24 is Consequently Inapposite.

Vermont is not a home rule state. This means that municipalities must point to enabling authority granted to them by the Vermont Legislature to act. *City of Montpelier v. Barnett,* 2012 VT 32, §20. In zoning matters, that authority is provided by the Planning Act, Chapter 177 of Title 24, Vermont Statutes Annotated. *State v. Sanguinetti*, 141 Vt. 349, 353 (1982) ["The powers of a municipality to accomplish zoning exists by virtue of authority delegated from the state, and may be exercised only in accordance with that delegation, subject to any terms and conditions imposed by the state"].

Preservation Burlington's *Complaint* alleges that the Vermont Legislature has restricted the authority of municipalities to impose zoning regulations with regard to certain institutions – both religious and secular -- at 21 V.S.A. §4413(a)(1). Those institutions include at subsection (C) "Churches and other places of worship, convents and parish houses." Preservation Burlington's federal Civil Rights Act theory is that this legislated limitation of zoning regulatory authority over churches gives a preference to religion which violates the Establishment Clause of the First Amendment.

Preservation Burlington's attack upon §4413 is a non-sequitur. Even were §4413(a)(1)(C) deemed unconstitutional as they request, that would not supply Burlington with subject matter jurisdiction to prohibit demolition now withheld by the *CDO* itself. This was recognized in the DRB's *Findings and Conclusions* at page 6.

> Though even if 24 V.S.A. 4413 did not apply, the provisions of 5.4.8 do not as the building does not qualify as a historic building under Article 5. It is not yet 50 years old. These finding reflect the input of the City Attorney.

4

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

There is no ripe, justiciable controversy regarding §4413(a)(1)(C).

### C. Religious Accommodation Does Not Violate the Establishment Clause.

Preservation Burlington would have no claim even if it were ripe. Bestowing a regulatory exemption upon religious entities does not violate the Establishment Clause. It is a permissible legislative accommodation to alleviate a significant governmental interference with the ability of religious organizations to carry out their religious missions. *Cutler v. Wilkinson,* 544 U.S. 709 (2005), *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 483 U.S. 327, 334-35 (1987); *Walz v. Tax Commission of the City of New York*, 397 U.S. 664. 669 (1970).

## II. IT IS THE TRUST, PARISH, AND BISHOP WHO HAVE SUFFERED AND CONTINUE TO SUFFER IRREPARABLE HARM FROM VIOLATIONS OF THEIR RIGHTS UNDER RLUIPA.

The City of Burlington has since 2021 been guilty of violating the federal protections afforded by the Religious Land Use and Inmate Protection Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. RLUIPA is itself part of the federal Civil Rights Act. Although Burlington has relented by dint of its DRB's decision, Preservation Burlington wishes to continue that with that illegality. RLUIPA is a defense to those efforts. 42 U.S.C. §2000cc-2(a).[5]

RLUIPA was and is being violated in two respects.

---

[5] "A person may assert a violation of this chapter as a claim or defense…"

5

### A. Equal Terms.

The Cathedral is one of two in the Roman Catholic Diocese of Burlington. It was granted by the Diocese to the Cathedral of the Immaculate Parish Charitable Trust in May of 2006. In 2018 Bishop Coyne issued a *Decree of Amalgamation (Extinctive Union)* merging the Immaculate Conception Parish with St. Joseph Cathedral Parish, also in Burlington. By operation of that Decree, the Trust and the Cathedral of Immaculate Conception became the property of St. Joseph Cathedral Parish (hereinafter the "Parish").

To require the Trust/Parish to undergo the process of obtaining a zoning permit for demolition of the Cathedral when its own *CDO* withheld any jurisdiction to do so was a violation of the equal terms provisions of RLUIPA, 42 U.S.C. §2000cc(b)(1):

> No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

*Third Church of Christ, Scientist of New York City v. City of New York*, 626 F.3d 667 (2nd Cir. 2010) [restricting use of church facilities for private catered events while allowing same for secular institutions in the same neighborhood]; *Konikov v. Orange County*, 410 F.3d 1317, 1327 (11th Cir. 2005 [requiring a "special exemption" for uses by religious but not secular organizations]; *Village of West Dundee v. First United Methodist Church*, 74 N.E.2d 144 π21 (Ill. App. 2017) [allowing commercial land uses to demolish buildings while denying the church the same right]; *Centro Familiar Cristiano Buenos Nuevas v. City of Yuma*, 651 F.3d 1163, 1175 (9th Cir. 2011) [requiring religious entities to secure conditional use permits not required of secular entities]; *The Bensalem Masjid v. Bensalem Township*, U.S. District Court for the Eastern District of PA., No. 14-6955

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

(Sept. 22, 2015) [application of different or more rigorous zoning standards to religious organizations].

Burlington has not required owners of non-religious buildings which similarly are less than 50 years old to apply for or obtain zoning permits to undertake their demolition. The chief non-religious comparator is the now notorious "pit": the 2017-18 demolition of the Burlington Town Center Mall (formerly the Burlington Town Center) and its Cherry Street parking garage[6] which was adjacent to the Cathedral's grounds. That Mall facility was built in 1974,[7] three years before the Cathedral.

The treatment of the Trust /Parish has been diametrically opposite. They were first told by the Burlington Department of Permitting and Inspections on August 12, 2021 that although zoning had no jurisdiction over *whether* or not the Cathedral could be demolished, a zoning permit was required as a formality to secure a Department of Public Works building permit approving the *manner* of the demolition. The Trust applied for both permits on December 17, 2021. The Permitting and Inspections Department then changed its position, endeavoring to find ways to circumvent this lack of zoning jurisdiction. Even though the Trust/Parish had no redevelopment plans, Permitting and Inspections required the Trust to undergo a substantive zoning review *whether* to approve the demolition which included of plans for the redevelopment of the property after the deconsecration by demolition was completed. Because the Trust and Parish had no such

---

[6] Cross-Motion Exhibit #5, Department of Planning and Zoning Staff Comments, February 7, 2017 regarding the Burlington Town Center redevelopment project published by Burlington at www.burlingtonvt.gov/DPI/DRB/Agendas as a pdf attachment, item #8. Page 9 of **Major Impact Review Standards.** "The project site is a city block that was razed and reconfigured during Burlington's 1960's Urban development plan…The site is significantly disturbed and all original buildings removed earlier. The existing retail mall has no historic significance."

[7] *Id.* P.5. Certificate of Appropriateness granted March, 1974.

7

plans, the application was left in limbo. Both permit applications were therefore withdrawn as a futility.

In 2022 the Permitting and Inspections Department changed its position again. While it no longer required the Trust/Parish to submit redevelopment plans, it still required the them to undergo zoning review whether or not the demolition should be allowed under the Historic Buildings provisions of the *CDO*. The Trust applied again for a zoning permit on October 27, 2022. The Permitting and Inspections Department did not make any approval determination itself as the Burlington's zoning administrator. Instead it referred determination of that permission to Burlington's Development Review Board (DRB). After hearing, Burlington's DRB acknowledged in its written decision that "section 5.4.8 does not" apply.

Though the City of Burlington has now relented and recognized its own lack of jurisdiction, Preservation Burlington wishes to soldier on with this unequal treatment of the Trust/Parish.

### B. Substantially Burdening the Trust's, Parish's, and Bishop's Religious Exercise.

RLUIPA provides at §2000cc(a)(1)

No government shall implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution

(A) is in furtherance of a compelling governmental interest…

"Religious exercise" as defined by RLUIPA 42 U.S.C. §2000-5(7)(A) includes the exercise of religious belief "whether or not compelled by, or central to, a system of religious belief." That obviates analysis whether the religious exercise implicated by a

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

particular governmental action is central to the litigant's faith. The religious organization need only show that is sincerely held. *Holt v. Hobbs*, 574 U.S. 352, 360 (2015). The governmental action in question must compel action or inaction with respect to a sincerely held religious belief. *Westchester Day School v. Village of Mamaroneck*, 280 F. Supp.2d 230, 239 (S.D.N.Y. 2003).

Deconsecration of the Cathedral by demolition is such a "religious exercise."[8] *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 84-85, 93. (1st Cir. 2013):

> According to Roman Catholic canon law, when a church goes out of service for religious worship, the Bishop comes under an obligation to protect the religious ornamentation in and on the building so that it is not put to "sordid" use…
>
> RCB has established procedures for dealing with religious symbols when a church has been closed for worship…Symbols that cannot be removed may also be destroyed – along with the building itself, if necessary – if RCB determines that destruction is necessary to avoid desecration.

The case in *Roman Catholic Bishop* was heard but relief was denied because the Church had not yet set upon a specific deconsecration in question. The Bishop/Trust/Parish here have had such plans long in place. Because it no longer requires two cathedrals the Diocese the began the process under Canon Law for the deconsecration of the Cathedral. That deconsecration process involved Diocese Bishop Christopher Coyne, the Presbyteral Council, the Diocesan Finance Council, the College of Consultors, and required the approval of the Holy See. In accordance with Canon Law, on May 23, 2018 issued the aforementioned *Decree of Amalgamation.* That three-year process culminated on

---

[8] "The use, building, or conversion of real property for the purpose of religious exercise shall be considered to be a religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. §2000cc -5(7)(B).

9

September 15, 2021 when the Holy See issued a *nihil obstat*, a decree authorizing deconsecration of the Cathedral by demolition.

Consequently, until the DRB acknowledged that the *CDO* itself withholds subject matter jurisdiction, Burlington's actions substantially burdened the Trust's, Parish's, and Bishop's religious exercise in violation of RLUIPA, 42 U.S.C. §2000cc(a).

> …Courts have often looked to whether the land use restriction was "imposed on the religious institution arbitrarily, capriciously, or unlawfully." This may occur where, for instance, local regulators disregard objective criteria and instead act adversely to a religious organization based on the objections of a "small but influential group" in the community…It may also occur where local regulators base their decisions on misunderstandings of legal principles (such as) "repeated legal errors" by the city, suggesting that errors were indicative of city either being "deeply confused about the law" or "playing a delaying game"…
>
> Taken together, these factors reveal that the substantial burden analysis often "backstops the explicit prohibition of religious discrimination in" RLUIPA's subsection (b) much in the same way as "the disparate-impact theory of employment discrimination backstops the prohibition of intentional discrimination." Under the substantial burden framework, a court may block application of a land use regulation under RLUIPA's subsection (a) where the context raised an "inference" of hostility to a religious organization, even where the evidence does not necessarily show the explicit discrimination "on the basis of religion" contemplated by subsection (b)…
>
> *Roman Catholic Bishop, supra* at 93, 97 (internal citations omitted).

RLUIPA makes the Canon Law decision to deconsecrate by demolition the controlling law here. Canon Law is certainly "sincerely believed" within the Roman Catholic Church as required by *Holt*. The deconsecration by demolition decision was undertaken pursuant to Canon Law under *Roman Catholic Bishop*. Blocking deconsecration by demolition would "compel inaction" with respect to a sincerely held religious belief under *Westchester Day School*. Insofar as its own *CDO* withheld any jurisdiction to do so, it could not and cannot now be shown that Burlington had or has

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

any compelling governmental interest to do so, and did or can do so in the least restrictive manner possible under *Holt*.

### C. "Death by a Thousand Cuts": Preservation Burlington Seeks to Exacerbate the Trust's/Parish's Ongoing Harm from Delay.

The Parish is the most diverse and among the poorest in the Diocese. The Parish is and has been ready to proceed with demolition since the 2021 *nihil obstat*. It has been thwarted for a year and one half by the City of Burlington's administrative maneuvering around its own lack of jurisdiction. *Roman Catholic Bishop, supra.* Preservation Burlington seek to continue that maneuvering which will result in further delay, harm, and damage to the Parish. *Temple B'Nai Zion v. City of Sunny Isles Beach*, 727 F.3d 1349, 1358 (11th Cir. 2013) [to delay resolution of the claims where no further factual development is necessary only serves to work a hardship on the religious organization] citing *Roman Catholic Bishop, supra* [imposition of land use restrictions on religious organization is a veto power which hangs like a Sword of Damocles].

RLUIPA was adopted in 2000 unanimously by both houses of Congress. *Cutler, supra* at 714-15; *Cottonwood Christian Center v. Cypress Redevelopment Agency*, 212 F.Supp. 2d 1203, 1220 (C.D. Calif. 2002). The purpose of RLUIPA is to provide pre-emptive federal protection to religious organizations by prohibiting land use activities – including application and interpretation of ordinances -- which violate the statute. The Parish has a right to proceed with demolition of the Cathedral under the pre-emptive protection of RLUIPA.

### III. PRESERVATION BURLINGTON ALSO LACK ARTICLE III STANDING.

Preservation Burlington cannot show any immediate and irreparable harm to themselves because they lack Article III standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992) and therefore have has no justiciable claim. As discussed above, theirs is an abstract legal theory about religious establishment by 24 V.S.A. §4413 which is a *non sequitur*. They speculate about a generalized grievance which lacks any allegations of particularize personal injury in fact to themselves which is likely and redressable. Theirs does not involve the funding of religious institutions with public funds, *Swart v. South Burlington Town School District*, 122 Vt. 177 (1961); the display of religious symbols on public property, *Kaplan v. City of Burlington*, 891 F.2d 1024 (2nd Cir. 1989); or a claim of peer or social group coercion to participate in prayer or religious activity, *Kennedy v. Bremerton School*, 597 U.S. ___ (2022), *Engel v. Vitale*, 370 U.S. 421 (1963).

As the parties invoking federal jurisdiction they bear the burden of establishing Article III standing. *Lujan, supra.* Where, as here, the asserted injury arises from the regulation of, or failure to regulate, someone else they have a much more difficult time establishing that they satisfy the standing test. *Id.* They cannot do so.

Dated at Burlington, Vermont this 27th day of February, 2023.

/s/ *John L. Franco, Jr.*
John L. Franco, Jr.
110 Main Street
Burlington, VT. 05401
(802) 864-7207
Email: johnfrancolaw@aol.com