UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

PRESERVATION BURLINGTON, )
KARYN NORWOOD, LIISA REIMANN, )
and RON WANAMAKER, )
)
Plaintiffs, )
)
v. ) Case No. 2:23-cv-00039
)
CATHEDRAL OF THE IMMACULATE )
CONCEPTION PARISH CHARITABLE )
TRUST and CITY OF BURLINGTON, )
)
Defendants. )

**OPINION AND ORDER
CONDITIONALLY GRANTING PLAINTIFFS' MOTION TO AMEND AND
GRANTING DEFENDANTS' MOTIONS TO DISMISS,**
(Docs. 12, 21, 54)

Plaintiffs Karyn Norwood, Liisa Reimann, and Ron Wanamaker (collectively, "Plaintiffs")[1] bring this action against Defendants Cathedral of the Immaculate Conception Parish Charitable Trust (the "Trust") and City of Burlington (the "City") (collectively, "Defendants") under 42 U.S.C. § 1983, alleging that 24 V.S.A. § 4413 violates the Establishment Clause of the First Amendment by exempting religious facilities from local zoning requirements with which secular property owners must comply. Plaintiffs seek a declaratory judgment that the religious exemption provision of § 4413 is unconstitutional under the First Amendment[2] and an order enjoining the Trust

---

[1] In its April 14, 2023 Order, the court dismissed Preservation Burlington as a plaintiff. (Doc. 55.) On May 18, 2023, the court construed Ron Wanamaker's unopposed motion to intervene as a motion to amend the Complaint and granted his request to be joined as a plaintiff in this action. (Doc. 70.)

[2] Pursuant to Fed. R. Civ. P. 5.1 and this court's order, Plaintiffs served notice of their challenge to § 4413 on the Vermont Attorney General by letter dated March 30, 2023. *See* Fed. R. Civ. P. 5.1(a)(2) ("A party that files a pleading . . . drawing into question the constitutionality of a

from demolishing the former Cathedral of the Immaculate Conception (the "Cathedral") until certain conditions are met. Plaintiffs are contemporaneously pursuing parallel litigation in state court. *See* Appellants' Motion for Stay, *In re Cathedral of the Immaculate Conception Par. Charitable Tr., 20 Pine St.*, No. 23-ENV-10 (Vt. Super. Ct. Envt'l Div. Mar. 1, 2023).[3]

Pending before the court are motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) filed by the Trust on February 27, 2023 (Doc. 12) and by the City on March 9, 2023. (Doc. 21.) The Trust responded to the City's motion on March 10, 2023 (Doc. 24) to oppose the City's request in the alternative for *Pullman* abstention. After the court held a hearing on the motions on March 30, 2023, Plaintiffs responded to both motions on April 13, 2023. (Doc. 52.) The Trust replied on April 14, 2023 (Doc. 57), and the City replied on May 4, 2023. (Doc. 65.)

On April 13, 2023, Plaintiffs filed a motion to amend their Complaint. (Doc. 54.) The Trust opposed the motion on April 14, 2023 (Doc. 56), and the City opposed it on May 4, 2023. (Doc. 64.) Plaintiffs replied on May 30, 2023. (Doc. 72.)

On August 11, 2023, the Trust moved to stay the filing of a discovery schedule pending the resolution of Defendants' motions to dismiss (Doc. 79), which the City joined on August 15, 2023. (Doc. 80.) Plaintiffs have not opposed the motion. Their deadline for doing so has not yet expired.

---

federal or state statute must promptly . . . serve the notice and paper . . . on the state attorney general if a state statute is questioned[.]"). On April 7, 2023, the Vermont Attorney General filed a letter with the court declining to exercise its right to intervene at this time. (Doc. 51.)

[3] In reviewing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court may consider facts subject to judicial notice, facts alleged in the complaint, "any written instrument attached to [the complaint] as an exhibit[,]" "documents incorporated in [the complaint] by reference[,]" and any documents considered "integral to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks and citations omitted). The court takes judicial notice of the March 1, 2023 motion for stay filed in the Environmental Division of the Vermont Superior Court to establish Plaintiffs' parallel litigation in that forum. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal quotation marks omitted).

Ms. Norwood, Ms. Reimann, and Mr. Wanamaker are self-represented. The Trust is represented by John L. Franco, Jr., Esq. The City is represented by Jonathan T. Rose, Esq., and Malachi T. Brennan, Esq.

I. **Whether Plaintiffs Should Be Granted Leave to Amend.**

Plaintiffs move to amend their Complaint to add factual allegations regarding the initial plans of the Roman Catholic Diocese of Burlington (the "Diocese") to sell the Cathedral rather than demolish it, the Diocese's subsequent repair of the Cathedral steps, and the conversion of other former Catholic churches in Vermont to secular use. Defendants oppose Plaintiffs' motion on the grounds that the proposed amendments are futile.

A plaintiff may only amend his or her complaint "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The court "should freely give leave when justice so requires[,]" *id.*, and the Second Circuit has cautioned that "[a] *pro se* complaint should not be dismissed without the [c]ourt granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). The court finds no bad faith or undue delay. It also finds no undue prejudice.

"[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). Amendment is futile where there is a substantive problem with a cause of action that cannot be cured by better pleading. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Defendants' motions to dismiss turn on the adequacy of Plaintiffs' allegations

regarding their standing to bring their Establishment Clause challenge to the constitutionality of 24 V.S.A. § 4413, a Vermont state statute limiting municipal discretion in zoning decisions.[4] Plaintiffs' proposed additional allegations regarding the intended, actual, or possible uses of the Cathedral are not material to the resolution of that challenge and thus are arguably futile but, by the same token, cause no prejudice to Defendants.

In light of Plaintiffs' self-represented status and because they have not previously sought leave to amend, the court conditionally GRANTS Plaintiffs' motion to amend their Complaint. It will decide the pending motions to dismiss and the issue of futility in the context of the Amended Complaint ("AC"). *See* Fed. R. Civ. P. 1.; *see also Alice Peck Day Mem'l Hosp. v. Samuelson*, 2023 WL 4157434, at *1 (D. Vt. June 23, 2023) ("While the motions to dismiss were pending, [p]laintiffs moved to amend their Complaint[.] . . . This court granted [p]laintiffs' motion . . . stating that it would consider the pending motions to dismiss in light of Plaintiffs' [First Amended Complaint]."); *Wolfe v. Enochian BioSciences Denmark ApS*, 2022 WL 656747, at *2 (D. Vt. March 3, 2022) ("In order to further the just, speedy, and inexpensive determination of this

---

[4] 24 V.S.A. § 4413 provides in relevant part:

> (a)(1) The following uses may be regulated only with respect to location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking, loading facilities, traffic, noise, lighting, landscaping, and screening requirements, and only to the extent that regulations do not have the effect of interfering with the intended functional use:
>
> (A) State- or community-owned and operated institutions and facilities;
>
> (B) public and private schools and other educational institutions certified by the Agency of Education;
>
> (C) churches and other places of worship, convents, and parish houses;
>
> (D) public and private hospitals;
>
> (E) regional solid waste management facilities certified under 10 V.S.A. chapter 159;
>
> (F) hazardous waste management facilities for which a notice of intent to construct has been received under 10 V.S.A. § 6606a.

action, . . . the court GRANTS [p]laintiffs' motion to amend and will consider Defendants' motions to dismiss in light of the Amended Complaint.").

## II. Allegations in the AC.

Ms. Norwood is a Burlington resident who serves on Preservation Burlington's board of directors. Ms. Reimann is a Burlington resident. The Trust is the owner of the Cathedral property, which is located at 20 Pine Street in Burlington, Vermont.

Plaintiffs allege that the Cathedral was designed by prominent World War II-era architects and completed in 1976. As "the premier example of modern architecture in the City of Burlington[,]" the Cathedral and its landscape architecture "have been acclaimed by both national publications and noted contemporary architects." (Doc. 1 at 3, ¶¶ 9-10.)

The Burlington Development Review Board ("DRB") has acknowledged that the Cathedral "is a significant property within the city's downtown." *Id.* ¶ 11 (internal quotation marks omitted). In 2012, the City recommended the Cathedral be listed in the National Register of Historic Places. In 2013, the Vermont Division for Historic Preservation, the Vermont Agency of Transportation, and the Federal Transit Administration found the Cathedral to be eligible for the State and National Registers of Historic Places. The Cathedral allegedly satisfies the National Register's requirements for buildings that are less than fifty years old because it has "exceptional importance." *Id.* ¶ 11 (internal quotation marks omitted). The DRB has nonetheless found that the Cathedral is not a "historic building" under its zoning regulations. Doc. 1-1 at 3.

The Cathedral was used for worship services from 1976 to 2018. On October 9, 2018, the Diocese announced that the Cathedral would be sold. At the time, the Diocese did not plan to demolish the building. Bishop Christopher Coyne allegedly stated that "the property could be converted to commercial or residential use, or both." (Doc. 54-1 at 3, ¶ 12) (internal quotation marks omitted). The real estate listing for the Cathedral advertised "the opportunity to continue to utilize the existing building or develop a project that suits the Burlington market and landscape." *Id.* (internal quotation marks omitted). After announcing the sale of the Cathedral, the Diocese allegedly spent $600,000 repairing or replacing its steps.

On December 8, 2018, the final Mass in the Cathedral was held and the Cathedral was formally decommissioned as a place of worship. Its altar, tabernacle lamp, and part of the confessional have been removed. The building was fenced off and vacant for the four years preceding the filing of this action.

Plaintiffs allege that at least four other former Catholic churches in the Vermont Diocese have been converted to secular use. These churches include St. Margaret Mary Church in Arlington, Vermont, which is now a community-based arts and wellness center; St. John the Apostle in Johnson, Vermont, which is now a community and recovery center; Our Lady of Lourdes in Pownal, Vermont, which was sold to a private owner for use as a workshop and residence; and St. Sylvester Church in Graniteville, Vermont, which was sold to a private owner for use as a martial arts workshop and residence.

On or about October 27, 2022, the Trust applied for a zoning permit to demolish the Cathedral. The DRB held hearings regarding the Trust's demolition application on December 20, 2022 and January 11, 2023. Plaintiffs allege that although the Trust informed the DRB that it had no planned use for the property after the Cathedral's demolition, "the property is under contract to be sold to CityPlace Partners once the former cathedral is demolished." *Id.* at 4, ¶ 15. CityPlace Partners allegedly intends to use the property as a "staging area" for an adjacent project. *Id.*

On December 13, 2022, the Burlington Department of Permitting and Inspections issued an internal memorandum stating that 24 V.S.A. § 4413 prevented the Trust's zoning request from being reviewed under Article 14 of the Burlington Comprehensive Development Ordinance ("CDO"). Article 14 allegedly requires projects in downtown Burlington to comply with the City's municipal plan but allows the DRB to grant alternative modes of compliance when conformity is not possible or desirable.[5]

---

[5] In light of the Complaint's references to the CDO's provisions, the court treats the CDO as incorporated by reference in the Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("For purposes of . . . [R]ule [12(b)], the complaint is deemed to include any

6

After holding hearings on the Trust's zoning request on December 20, 2022 and January 11, 2023, the DRB issued a decision on January 17, 2023 granting the Trust's demolition permit. The decision stated that the CDO's standards for reviewing changes to historic buildings did not apply to the Cathedral as it was less than fifty years old. *See* Doc. 1-1 at 3 ("[E]ven if 24 V.S.A. § 4413 did not apply, the provision of 5.4.8 do not as the building does not qualify as a historic building under Article 5. It is not yet fifty years old. These findings reflect the input of the City Attorney."). It further stated that the limitations that § 4413 imposes on municipal review of "churches and other places of worship, convents, and parish houses" "substantially limit[ed]" the DRB's application of Article 14's review standards. *Id.* at 2.[6] Plaintiffs' requested injunction would prevent the

---

written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). Article 14 of the CDO provides in relevant part:

### 14.7.3 - Variation from the Form: Administrative Relief, DRB Alternative Compliance, and Variances

The planBTV Downtown Code is intended to result in By-Right approval where development occurs strictly in conformance with the requirements of the applicable Form District. In some instances, however, it may be necessary to vary the prescribed form in order to accommodate unique site and/ or building circumstances in order to promote context-sensitive development. In such instances, an applicant may seek Administrative or Development Review Board approval for relief from the requirements as set forth below.

City of Burlington, Article 14: PlanBTV Downtown Code (2021), https://www.burlingtonvt.gov/sites/default/files/Art14planBTVDowntownCode_20221003.pdf (last accessed August 21, 2023) (emphasis in original).

[6] The DRB's decision further explained its determination as follows:

Demolition is not expressly enabled or prohibited by Article 14. Demolition alone is not addressed at all. Even under the statutory limitations of 4413, form code standards as to building bulk, height, setbacks, etc. apply; however, in this case, the end result lacks anything to comply. A currently developed site is being converted to an entirely undeveloped site with no use at all.

The act of demolition requires a zoning permit. The proposed work does not comply with the standards of Article 14 and, therefore, requires review under Alternative Compliance. The review criteria of Alternative Compliance are substantially limited by 24 V.S.A. §4413, and the complete demolition of the building and all site improvements leaves nothing to comply.

(Doc. 1-1 at 4-5.)

7

Trust from demolishing the Cathedral and its landscape "unless and until the Burlington DRB issues a demolition permit following a determination that the demolition complies with Article 14[.]" (Doc. 1 at 5.)

### III. Conclusions of Law and Analysis.

#### A. Standards of Review.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted), *aff'd*, 568 U.S. 85 (2013). "'The party invoking federal jurisdiction bears the burden of establishing' that jurisdiction exists." *Sharkey v. Quarantillo*, 541 F.3d 75, 82-83 (2d Cir. 2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (internal alteration, citation, and quotation marks omitted).

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also

"not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.* (internal quotation marks and citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

Although Defendants cite additional materials in support of their motion to dismiss, those materials may only be considered for purposes of their subject matter jurisdiction challenge. *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings."). They cannot be considered in terms of whether the AC states a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *see also M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013) (explaining that the court cannot consider "non-conclusory, non-hearsay statements outside the pleadings . . . under Rule 12(b)(6) unless they are incorporated within or integral to the complaint").

**B. Whether the Court Has Subject Matter Jurisdiction Over Plaintiffs' Establishment Clause Claim.**

Defendants seeks dismissal of the pending action under Fed. R. Civ. P. 12(b)(1) for lack of standing, arguing that Plaintiffs fail to satisfy the prudential standing requirements necessary to bring an Establishment Clause claim. Defendants also contend that Plaintiffs lack constitutional standing.

"Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Carver v. City of N.Y.*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Keepers, Inc. v. City of Milford*,

9

807 F.3d 24, 38 (2d Cir. 2015) (internal quotation marks omitted).

To establish the "irreducible constitutional minimum of standing[,]" a plaintiff must demonstrate three elements: (1) that he or she has "suffered an injury in fact," (2) which is "fairly traceable to the challenged action of the defendant," and (3) which is "likely . . . [to] be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (internal quotation marks, alterations, and footnote omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561 (alteration adopted) (internal quotation marks omitted).

"In addition to these core constitutional requirements, litigants must also satisfy 'prudential standing,' which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Keepers, Inc.*, 807 F.3d at 39 (internal quotation marks omitted). The Second Circuit has explained that "because Establishment Clause injuries, by their nature, can be 'particularly elusive[,]'" courts apply prudential standing principles to limit the class of litigants entitled to bring an Establishment Clause claim to parties that satisfy at least one of "three distinct theories of standing": "(1) taxpayer, (2) direct harm, and (3) denial of benefits." *Montesa v. Schwartz*, 836 F.3d 176, 195-96 (2d Cir. 2016) (observing that "[t]hese three theories evolved out of the unique context in which plaintiffs bring Establishment Clause claims"). "The party invoking federal jurisdiction bears the burden of establishing prudential and constitutional standing[.]" *Keepers, Inc.*, 807 F.3d at 39 (internal quotation marks omitted).

### 1. Whether Plaintiff Must Satisfy Prudential Standing.

As a threshold matter, Plaintiffs argue that prudential standing requirements are "not really standing requirements at all" and instead "go to the merits" of Defendants' Rule 12(b)(6) arguments. (Doc. 72 at 1.) They contend that, at the jurisdictional stage, they need not establish their claim falls within one of the standing theories identified by the Second Circuit in *Montesa v. Schwartz*. This argument is without merit. Plaintiffs' Establishment Clause claim is the sole claim pending before the court and Plaintiffs must

have both constitutional standing and prudential standing to allege it. Because constitutional standing at the pleading stage is relatively easily established, the court addresses prudential standing first.

The Second Circuit has recognized three types of standing for a party pursuing an Establishment Clause claim, which "developed in response to the concerns that gave rise to [the court's] prudential standing jurisprudence[] and . . . have evolved to allow only particular types of Establishment Clause injuries to be adjudicated." *Montesa*, 836 F.3d at 196. Courts in the Second Circuit address whether a plaintiff has plausibly alleged standing pursuant to one of these theories as part of a threshold jurisdictional analysis, not an inquiry into the merits.[7] For their claim to survive Defendants' Rule 12(b)(1) motions to dismiss, Plaintiffs must therefore plausibly allege standing to bring an Establishment Clause claim under one of the three types of standing: "taxpayer," "direct harm," or "denial of benefits." *Id.* at 195-96.

### 2. Whether Plaintiffs Plausibly Allege Direct Harm or Direct Exposure Standing.

Plaintiffs contend that they have sufficiently alleged that they have standing under a direct harm or direct exposure theory, although they maintain that the Second Circuit's decision in *Montesa v. Schwartz* "offers little guidance" (Doc. 72 at 10) because its facts are "not on point[,]" *id.* at 6, and its statement of the law is "dicta" and thus "[n]ot [p]ersuasive [a]uthority." *Id.* at 9. *Montesa*, however, remains controlling precedent.

For the purposes of their direct exposure argument, Plaintiffs allege that they have suffered a "procedural injury" due to the City's refusal to apply zoning requirements that

---

[7] *See, e.g., Urso v. Mohammed*, 2023 WL 2456702, at *13 (D. Conn. Mar. 10, 2023) (citing *Montesa*, 836 F.3d at 195, 197, and granting summary judgment for defendant where plaintiff could not establish direct harm theory of standing under the Establishment Clause); *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, New York*, 2022 WL 4647821, at *7-8 (S.D.N.Y. Sept. 30, 2022) (finding plaintiffs failed to establish taxpayer, direct harm, or denial of benefits standing required to bring an Establishment Clause claim and dismissing for lack of subject matter jurisdiction); *King v. New York by Hochul*, 2021 WL 765724, at *4 (N.D.N.Y. Feb. 26, 2021), *aff'd*, 2022 WL 1451446 (2d Cir. 2022) (holding plaintiff bringing Establishment Clause claim lacked standing because she did not suffer direct harm).

11

would apply to secular property owners and contend they will experience an "aesthetic injury" if the Cathedral, as an architecturally significant building, is demolished. *Id.* at 3. Plaintiffs allege that they will be "directly exposed" and "directly affected" by this harm because they reside in the community where the alleged injuries have occurred or will imminently occur and "regularly see and pass by" the Cathedral. *Id.* at 11 (internal quotation marks omitted). While these allegations may suffice for a claim brought under environmental laws, they do not provide standing for an Establishment Clause claim.

To establish standing under a direct exposure theory, a plaintiff may show either that he or she is (1) "personally constrained or otherwise subject to control under a governmental policy, regulation, or statute grounded in a 'religious' tenet or principle" ("religious law" cases), or (2) "personally confronted with a government-sponsored religious expression that directly touches the plaintiff's religious or non-religious sensibilities" ("expression" cases). *Montesa*, 836 F.3d at 197. "In both situations, it is a plaintiff's interaction with or exposure to the religious object of the challenged governmental action that gives rise to the injury." *Id.* Because a plaintiff's injury in an "expression" case "is often elusive, the connection between the plaintiff and the challenged action—i.e. the 'exposure'—must be direct and immediate in order to satisfy the requirement that the plaintiff have a 'direct and personal stake in the controversy.'" *Id.* (quoting *Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1107 (2d Cir. 1992)).

Plaintiffs claim that the City, constrained by § 4413 in its municipal zoning review of churches, improperly issued a permit allowing the Cathedral's demolition to proceed. This, however, fails to accurately characterize the City's decision. First, the City determined that the Cathedral was not a "historic" building. Plaintiffs do not contest this determination, although they contend the Cathedral is otherwise historically and architecturally significant. Second, the City relied on a neutral statute that exempts a number of uses whether they are secular or not. At best, Plaintiffs allege that the City took into consideration the Cathedral's religious nature when it should not have. They do not plausibly allege this was a "government-promoted expression of religion." *Id.*

The fact that Plaintiffs "have focused their concerns on their own backyards" is

also not enough to establish direct exposure where they are neither abutters nor will be affected differently than any other resident by the DRB's decision. *Southside Fair Hous. Comm. v. City of New York*, 928 F.2d 1336, 1342 (2d Cir. 1991) (finding plaintiffs who challenged city's sale of land to Hasidic congregation had standing to bring Establishment Clause challenge because they alleged sale would displace them from neighborhood); *see also Sullivan v. Syracuse Hous. Auth.*, 962 F.2d at 1108 (finding standing where plaintiff was deprived of the use and enjoyment of his public housing facilities due to use by a Christian non-profit). To the extent that Plaintiffs claim that, if the Cathedral is demolished, they will be exposed to a government preference for religion, this does not constitute personal exposure to religious expression itself. *Compare Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, New York*, 2022 WL 4647821, at *8 (S.D.N.Y. Sept. 30, 2022) (holding that a zoning amendment permitting "expanded religious use of certain places" and construction of new places of worship did not "amount to direct exposures to religious expressions"), *with Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (holding "direct contact with religious displays" in postal facility conferred standing).

Participation of a religious organization in a zoning dispute does not automatically give rise to an injury grounded in religious activity. *See Gagliardi v. City of Boca Raton*, 2017 WL 5239570, at *8 (S.D. Fla. Mar. 28, 2017) ("[Plaintiffs' alleged] injuries bear the clear hallmarks of a zoning dispute that incidentally involves a religious organization rather than a dispute about Government support of religious activity."). Plaintiffs' alleged harm, deprivation of their aesthetic interest in the Cathedral, is thus an indirect effect that is "too far removed, too attenuated" from the allegedly unconstitutional restriction on municipal zoning review to confer standing. *See Montesa*, 836 F.3d at 189-99 (declining to find standing based on a direct exposure theory where students alleged that they were "deprived of educational services because public funds, which otherwise would have been available to them, were diverted to" religious institutions).

Plaintiffs contend that *Montesa* takes too narrow a view of standing in Establishment Clause cases. Even under the more expansive view endorsed by the dissent

13

in that case, however, they fail to allege that the City's zoning review practice cause them more than an "'indefinite' injury indistinguishable from that suffered by the public at large[.]" *Id.* at 203 (Reiss, J., dissenting) (citing *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 72 (2d Cir. 2001)); *see also Altman*, 245 F.3d at 72 ("[T]he party who invokes the power must be able to show, not only that the [practice] is invalid but that he has sustained or is immediately in danger of sustaining *some direct injury* as a result of its enforcement, and not merely that he suffers in some indefinite way *in common with people generally*.") (quoting *Doremus v. Bd. of Educ. of Borough of Hawthorne*, 342 U.S. 429, 434 (1952)) (emphasis supplied) (internal quotation marks omitted).

### 3. Whether Plaintiffs Plausibly Allege Taxpayer or Denial of Benefits Standing.

Plaintiffs also do not assert that they have taxpayer or denial of benefits standing. Their allegations would fare no better under either of those theories. Although taxpayers generally lack standing to challenge government action on the basis of their taxpayer status, "[i]n *Flast v. Cohen*, 392 U.S. 83 (1968), the Supreme Court recognized an exception to that rule and permitted a taxpayer to bring an Establishment Clause action when there is a logical link between his status as a taxpayer and the type of legislative enactment attacked as well as a nexus between that status and the precise nature of the constitutional infringement alleged." *Citizens United to Protect Our Neighborhoods*, 2022 WL 4647821, at *7 (alterations adopted) (internal quotation marks omitted). The Second Circuit "presume[s] a municipal taxpayer's relationship to the municipality is 'direct and immediate' such that the taxpayer suffers concrete injury whenever the challenged activity involves a measurable appropriation or loss of revenue[.]" *Altman*, 245 F.3d at 73 (quoting *United States v. City of New York*, 972 F.2d 464, 466 (2d Cir. 1992)) (internal quotation marks omitted). Plaintiffs allege that they are Burlington residents, but not that they are municipal taxpayers. They do not allege any "measurable appropriation or loss of revenue attributable" to the City's challenged zoning practices. *Id.* at 74. Accordingly, they have not plausibly alleged taxpayer standing.

Under a denial of benefits theory, plaintiffs in an Establishment Clause case "may

14

demonstrate standing on the ground that they have incurred a cost or been denied a benefit on account of their religion." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 130 (2011). Plaintiffs do not allege they have personally incurred any costs or have been denied any benefits on account of their religion. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 465 (1982) (holding that "the psychological consequence presumably produced by observation of conduct with which one disagrees . . is not injury sufficient to confer standing under Art. III").

Because Plaintiffs fail to plausibly allege the prudential standing requirements necessary to bring an Establishment Clause claim in federal court, the court lacks subject matter jurisdiction over their claim even if Plaintiffs could establish constitutional standing. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[S]ubject-matter jurisdiction . . . involves a court's power to hear a case[.] . . . [W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."); *In re U.S. Cath. Conf. (USCC)*, 885 F.2d 1020, 1023 (2d Cir. 1989) ("[W]hen a plaintiff lacks standing to bring suit, a court has no subject matter jurisdiction over the case."). Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants' motions to dismiss are GRANTED.

### C. Whether *Pullman* Abstention is Appropriate.

The City argues in the alternative that, if the court does not dismiss Plaintiffs' claim under Rule 12(b)(1) or 12(b)(6), it should abstain from deciding this case while Plaintiffs' parallel state court case is pending pursuant to the abstention doctrine articulated in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). Plaintiffs agree that *Pullman* abstention is appropriate and assert that "the case should be stayed pending a final state court decision, with an Order in place to preserve the status quo until the case is resolved." (Doc. 41 at 2.)

Under the *Pullman* abstention doctrine, "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Hous. Auth. v.*

*Midkiff*, 467 U.S. 229, 236 (1984). The City contends that the pending state court litigation raises unsettled issues of state law, including whether the Cathedral is a church or place of worship under § 4413 and whether § 4413 precludes the DRB from considering whether the Cathedral's demolition complies with Article 14 of the CDO.

"The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy *properly before it*." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (emphasis supplied) (internal quotation marks omitted). Because the court lacks subject matter jurisdiction over Plaintiffs' claim, it cannot abstain from exercising jurisdiction it does not have. In such circumstances, *Pullman* abstention does not provide an alternative ground for a stay or dismissal.

### D.     Whether to Stay the Filing of a Discovery Schedule.

Because Defendants are entitled to dismissal of the AC, the parties are no longer required to file a discovery schedule and no grounds for a stay exist. Whether to stay the filing of a discovery schedule is thus moot.

### CONCLUSION

For the foregoing reasons, the court CONDITIONALLY GRANTS Plaintiffs' motion to amend their Complaint (Doc. 54) and GRANTS Defendants' motions to dismiss. (Docs. 12, 21.) The court does not address *sua sponte* whether Plaintiffs may seek leave to amend their Complaint a second time. Plaintiffs have been granted leave to amend their Complaint once and have not requested leave to do so again.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 22nd day of August, 2023.

Christina Reiss, District Judge
United States District Court